UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY LAMONT MOORE #255379,

        Plaintiff,

v.                                   Case No. 2:16-cv-10
                                      HON. GORDON J. QUIST

KATHLEEN OLSON, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Anthony Lamont Moore, an inmate confined at Ojibway Correctional Facility (OCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Warden Kathleen Olson, Resident Unit Manager Thomas Perttu, Inspector Kristopher Taskila, Assistant Resident Unit Supervisor Deborah Loop, and Lieutenant Douglas Bull. Plaintiff asserts two claims: (1) a First Amendment retaliation claim against Defendants Perttu, Loop, and Bull; and (2) an Eighth Amendment deliberate indifference claim against all Defendants. Defendants have moved for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies. (ECF No. 18.) Plaintiff has responded. (ECF No. 33.) This matter is now ready for decision.

According to Plaintiff, on August 20, 2015, he was assaulted by a fellow inmate while incarcerated at Newberry Correctional Facility (NCF). PageID.5. After the assault, Plaintiff was transferred to OCF. PageID.5. During his first week at OCF, an inmate—who referred to himself as "Slick"—told Plaintiff that he would be assaulted again if he made any statements regarding the incident at NCF. PageID.5. After learning that Plaintiff already made a

statement, the inmate told Plaintiff that he could either leave OCF or suffer the consequences. PageID.5.

Plaintiff subsequently requested protection from Defendant Bull.  PageID.5. Defendant Bull refused Plaintiff's request and stated: "what[,] you are not man enough to handle this situation by yourself."  PageID.5.  Next, Plaintiff told Defendant Loop about the threat and that Defendant Bull refused to provide protection.  PageID.5.  Defendant Loop responded: "so are you man enough."  PageID.5.  In addition, Plaintiff sought help from Defendant Perttu. PageID.6.  However, Defendant Perttu did not believe that Plaintiff was threatened.  PageID.6. Plaintiff also sent multiple kites to Defendant Olson regarding the threat and his interactions with Defendants Bull, Loop, and Perttu.  PageID.5-6.  Plaintiff never received a response from Defendant Olson.  PageID.6.

In mid-to-late September, Plaintiff told a doctor and a nurse about the threat during an appointment.  PageID.6.  After hearing about the threat, the nurse "got on the phone with a lot of people" including Defendant Loop.  PageID.6. Plaintiff was subsequently placed in temporary segregation for his protection.  PageID.7.

While in temporary segregation, Plaintiff had a meeting with Defendants Olson, Perttu, and Taskila.  PageID.7.  During the meeting, Plaintiff identified the inmate who threatened him, and Defendants Olson, Perttu, and Taskila assured Plaintiff that the inmate would be transferred.  PageID.7.  Relying on the fact that the inmate was going to be transferred, Plaintiff signed a waiver and left temporary segregation.  PageID.7.  Plaintiff also attempted to file grievances against Defendants Bull, Loop, and Perttu.  PageID.7.

In late October 2015, Plaintiff saw the inmate that threatened him out in the yard. PageID.7.  Plaintiff then went to Defendant Bull to ask why the inmate was not transferred.

PageID.7.  Defendant Bull stated: "I knew one day you would need me, but you should have thought of that when you decided to file grievances on myself and others."  PageID.7.  Plaintiff subsequently approached Defendant Olson.  PageID.8.  Defendant Olson ignored Plaintiff and told him to work it out with Defendant Loop.  PageID.8.  Plaintiff attempted to talk to Defendant Loop, but Defendant Loop "ignored the matter and was mad that Plaintiff had attempted to file a grievance on her and her co-workers."  PageID.8.  Plaintiff also spoke with Defendant Perttu.  PageID.8.  However, Defendant Perttu also refused to help and stated: "see what writing grievances will get you."  PageID.8.  On November 2, 2015, Plaintiff was punched in the face when he left breakfast.  PageID.9.  Plaintiff alleges that the punch caused his face and eye to swell up.  PageID.9.

Based on these facts, Plaintiff asserts a retaliation claim against Defendants Perttu, Loop, and Bull; and a deliberate indifference claim against all Defendants.  Defendants argue that Plaintiff failed to properly exhaust any grievances on these claims.  Plaintiff argues that he exhausted all available administrative remedies because he attempted to file grievances, but the grievance coordinator refused to process the grievances.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52

(1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control  *Id.* at ¶ P.  If

oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).[1] The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall

---

[1] In *Holoway v. McClaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id.* at 3. The Sixth Circuit failed to provide any guidance as to how the MDOC might determine who the plaintiff intended to name in a future federal lawsuit at the time the plaintiff filed his Step I grievance.

generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In this case, Plaintiff has exhausted thirteen grievances through Step III of the grievance process while confined at OCF. However, twelve of those grievances were still pending and not completed until after Plaintiff filed the complaint. These twelve grievances do not exhaust any of Plaintiff's claims.[2] *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999) (holding that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit"). The only grievance that was exhausted through Step III when Plaintiff filed the complaint is Grievance 15-11-0713-28a, where Plaintiff alleged that his legal mail was improperly handled. PageID.173-175. Although this grievance was filed on the date that Plaintiff was allegedly punched in the face, it is not related to this case and does not exhaust any of Plaintiff's claims.

However, Plaintiff argues that he attempted to file several grievances against Defendants, but the grievance coordinator refused to process the grievances. Plaintiff has not submitted any copies of these grievances. However, Plaintiff alleges that he rewrote one grievance against all Defendants and sent it to the MDOC Administration, Office of Legal Affairs in Lansing. To support this allegation, Plaintiff points to a "note" on the MDOC Prisoner Step III Grievance Report. The note states: "11/12/15 Returned to P under cover letter requesting Step I and II documents; Submitted directly to OLA (No Grievance #)." PageID.171. This evidence tends to support Plaintiff's argument that the grievance coordinator was refusing to process his grievances, thus, making the grievance system unavailable to Plaintiff.

---

[2] Defendants submitted the MDOC Prisoner Step III Grievance Report to prove the fact that twelve grievances were exhausted after Plaintiff filed the complaint. Because Defendants did not submit the actual grievances, it is unclear whether any of these grievances are related to Plaintiff's claims in this case.

Defendants failed to file a reply brief or present any evidence contradicting Plaintiff's argument that he filed several grievances that were never processed. Therefore, in the opinion of the undersigned, there is a genuine issue of fact as to whether Plaintiff exhausted all available administrative remedies on his retaliation claim and deliberate indifference claim. *See Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

Accordingly, it is recommended that Defendants' motion for summary judgment (ECF No. 18.) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  _____October 24, 2016_____          _____*/s/ Timothy P. Greeley*_____
                                                                              TIMOTHY P. GREELEY
                                                                              UNITED STATES MAGISTRATE JUDGE