UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY MOORE,

    Plaintiff,

v.                                                           Case No.  2:16-cv-10
                                                           HON.  GORDON J. QUIST

KATHLEEN OLSON, et al.,

    Defendants.

_____/

REPORT AND RECOMMENDATION

Plaintiff Anthony Moore, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants failed to protect him from an assault by another inmate in violation of his Eighth Amendment and First Amendment rights due to his grievance submissions.  Plaintiff also asserts claims of staff corruption and negligent failure to protect.  Plaintiff has sued Defendants Warden Kathleen Olson, Resident Unit Manager Thomas Perttu, Inspector Kristopher Taskila, Assistant Resident Unit Supervisor Deborah Loop, and Lieutenant Douglas Bull.  Defendants have filed a motion for summary judgment (ECF No. 43) and Plaintiff has filed a response (ECF No. 52).

On August 20, 2015, Plaintiff was assaulted by another prisoner while he was housed at the Newberry Correctional Facility.  The assault was witnessed by prison staff and the identity of the prisoner assailant was not at issue.  On August 31, 2015, Plaintiff was transferred to Ojibway Correctional Facility (OCF).  Plaintiff alleges that about one week after his transfer, a prisoner he identifies as "Mr. Slick" and some other unknown prisoners threatened that if Plaintiff

made a statement against the prisoner assailant, or Plaintiff would be "beat up." One of the prisoners stated that he had heard that Plaintiff had already made a statement. "Mr. Slick" then told Plaintiff that he could either "lock up and be rode out" to another facility, or to stay and be stabbed or beaten.

When Plaintiff informed Defendant Bull, Defendant Bull stated "what you are not man enough to handle this situation by yourself?" Plaintiff then informed ARUS Loop who laughed and stated "so are you man enough?" Plaintiff sent requests to Defendant Olson, who had Defendant Perttu address the matter. Defendant Perttu responded by stating that he did not believe that Plaintiff had been assaulted at his previous prison. When Plaintiff suggested that he would file a grievance, Perttu responded that grievance filings would result in him not wanting to help Plaintiff. Plaintiff alleges that despite numerous letters to Defendant Olson, no action was taken to protect him.

Plaintiff visited health care in September of 2015, and Plaintiff informed the doctor about the statements made by "Mr. Slick," and the lack of response by Defendants. The doctor had his head nurse speak to Defendant Loop. Defendant Loop asked Plaintiff "so you were not lying about this?" Plaintiff responded that he was not lying. Plaintiff requested protection. Plaintiff was taken to temporary segregation after this conversation. While housed in temporary segregation, Defendants Olson, Perttu, and Taskila spoke with Plaintiff. Defendant Taskila showed Plaintiff a photo of "Mr. Slick" and told Plaintiff that "Mr. Slick" was a gang member who would be transferred out of the prison. Defendant Taskila denies these allegations. Plaintiff alleges that after Defendants assured him that "Mr. Slick" would be transferred to a different

2

facility, he signed a waiver form and returned to general population. Defendants deny that this meeting took place and deny the statements that Plaintiff attributes to them.

In late October 2015, Plaintiff saw "Mr. Slick" in the prison yard. Plaintiff informed Defendant Bull who stated "I knew one day you would need me, but you should have thought of that when you decided to file grievances on myself and others." Plaintiff found this response strange because his grievance had never been processed by the MDOC. Defendant Olsen told Plaintiff to contact Defendant Loop. Defendant Loop told Plaintiff that "I have better things to do, like listening in on prisoner's phone calls and putting a lot of prisoners on sanction, and that's why I ordered first and second shift to write as many misconducts they can. So as you can tell, I have more important things to worry about." (ECF No. 1) (PageID.8). Defendant Loop then placed a headset on her head that allowed her to listen to prisoners' phone conversations. Defendant Perttu refused to address the issue because he was mad at Plaintiff for filing a grievance on his co-worker Mr. Hamel. Defendants deny each of these allegations.

On November 2, 2015, Plaintiff was punched in the face "by one of the guys," causing swelling. Rumor was going around that "Crazy Black" punched Plaintiff and that "Mr. Slick was there." After Plaintiff returned to his unit from health care, Defendant Loop again denied protection stating "that Plaintiff's eye does not look that bad."

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to

3

interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Under the Eighth Amendment, a prison official has a duty to protect an inmate from violence caused by other prisoners. *Wilson v. Sieter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *Roland v. Johnson*, 856 F.2d 764 (6th Cir. 1988); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a

4

showing that the prison official consciously disregarded a substantial risk of serious harm to plaintiff. *Id.* at 839. The court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

*Id.* at 837. Thus, in order to support a claim that a prison official failed to protect plaintiff, two conditions must be satisfied: (1) the inmate must show that a substantial risk of harm was present and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind. *Id.*

In order to support an Eighth Amendment claim, plaintiff must establish "something more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate' or 'wanton'--exhibiting recklessness or callous neglect." *Id.* at 165. *See also Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Walker*, 917 F.2d 1449; *McGhee*, 852 F.2d at 881. An error of judgment does not subject a prison official to liability. *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity); *Marsh v. Arn*, 937 F.2d at 1069.

In *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982), the Sixth Circuit affirmed the dismissal of a prisoner's complaint that prison officials failed to protect him. In that case, prison officials transferred plaintiff for a period of six months to another prison cell after plaintiff informed the officials that he feared for his safety. Plaintiff was then transferred back to his original cell. Plaintiff informed his counselor that he feared for his safety, because he heard rumors

5

regarding a planned attack. Plaintiff was subsequently assaulted. The court found that defendants were not deliberately indifferent to a known risk of harm to plaintiff, and upheld the district court's finding that the assault was a single, isolated incident. The district court judge indicated that a full hearing would be appropriate if no action had been taken to protect the plaintiff. Plaintiff, however, was transferred to another unit after his initial complaints. Following plaintiff's transfer back to the original unit, he then made only general allegations that someone was going to hit him on the head. The court concluded that defendants, at most, were guilty of mere negligence and dismissed the claim.

In order to impose liability on a Defendant, Plaintiff must show that each Defendant was deliberately indifferent to a specific, known risk to Plaintiff's safety. *Farmer*, 511 U.S. at 833. Where there is inconsistent information regarding the identity of the attacker, or where Plaintiff refuses to identify his attacker, the denial of a request for a SPON (Special Problem Offender Notification) does not constitute deliberate indifference to a substantial risk of harm to Plaintiff. *Plovie v. Jackson*, 2005 WL 2405952, at *5 (W.D. Mich. Sept. 29, 2005).

In this case, Plaintiff asserts that each Defendant ignored his request for protection and instead made fun of him for making the request. Plaintiff asserts that despite his numerous requests for protection, Defendants took no action until he informed his doctor of the threat made by "Mr. Slick." Defendants assert that either they had no involvement in Plaintiff's requests for protection, or that they took appropriate action by investigating Plaintiff's request for protection before ultimately making a decision that Plaintiff's claim of a threat to his safety could not be verified.

Plaintiff alleges that he was threatened by "Mr. Slick" and other prisoners on August 31, 2015. The parties dispute what happened next regarding Plaintiff's requests for protection due to this threat. It is undisputed that on September 9, 2015, Defendant Loop received a telephone call from Heathcare Nurse Aho explaining that Plaintiff feared for his safety. Plaintiff was placed in temporary protective segregation at that time. Defendant Loop started to investigate Plaintiff's claim that he was threatened. She listened to Plaintiff's telephone calls and reviewed his J-Pay E-messages. In addition, Defendant Loop reviewed Plaintiff's institutional file. While listening to Plaintiff's telephone calls, she learned that Plaintiff believed his transfer to OCF was retaliatory and that he thought he was owed a transfer to a downstate prison facility. Defendant Loop states that because Plaintiff could not identify the time and location of the alleged threat, she was unable to review DVR security camera video. As a result, Defendant Loop was unable to verify Plaintiff's claim that he needed protection due to the threat of assault by another inmate.

Defendant Loop issued a Request For Protection / Investigation Report, dated September 9, 2015, that states in part:

> Moore . . . while at a health care call out reported [to] healthcare staff that he was threatened & is fearful for his safety. Moore interviewed, reported a gang member he only knows as "Slick" had threatened him on the yard 9/8 & 9/9/15. He could not recall the time [or] specific place this occurred. No physical altercations had occurred. He reports he is fearful for his safety as he was recently severely injured while at NCF & was hospitalized. Moore denies knowing the unit or number of the inmate that threatened him.
>
> Moore interviewed, reported nonspecific details regarding threat allegation. DVR was not reviewed as he would not provide a time frame or specific area where alleged incident occurred. Denies any physical altercation, states threats were of a verbal nature. States he is scared for his life due to recent incident at NCF. J-Pay E message reviewed-uneventful. Moore's phone calls reflect his desire to

7

> transfer from OCF; he feels he was sent here in retaliation & believes a transfer downstate is owed to him.

(ECF No. 44-7) (PageID.332). On September 11, 2015, Plaintiff signed an Ojibway Correctional Facility Protective Custody Waiver form. The waiver stated:

> I understand that I will be assigned to a housing area or work assignment where there are likely
>
> To be residents from whom I have sought protection.
>
> By VOLUNTARILY SIGNING this waiver, I acknowledge that my present situation has been
>
> Discussed with me, and ALL alternatives available have been explained, and I have voluntarily Agree not to seek protective custody.

(ECF No. 44-7) (PageID.333). Defendants Olson and Pettru acted as the Security Classification Committee that ultimately denied Plaintiff's request for protection.[1] The decision was made due to the fact that Defendant Loop's investigation "could not substantiate prisoner's claim" and because Plaintiff had indicated that he no longer wanted protective custody and requested to go to the general population.[2] Plaintiff indicated that he changed his mind because he thought he could get into the Violence Prevention Program, which is required before a prisoner can be paroled. (ECF No. 44-7) (PageID.332).

Each Defendant denies Plaintiff's allegations that they showed Plaintiff a photograph of "Mr Slick" and identified "Mr Slick" as a known gang member who would be

---

[1] Defendant Taskila was not at the facility and was off-work at the time Plaintiff was placed in temporary segregation until the day before Plaintiff was released to the general population. Defendant Taskila was not involved in the decision to deny Plaintiff protective custody.

[2] Plaintiff indicated that he was ordered to sign the waiver form and that he did so only on the condition that the matter would be further investigated. Plaintiff has presented an Ojibway Correctional Facility Protective Custody Waiver form dated February 5, 2016, where he once again waived protective custody and wrote: "Note: I am signing this with the request that the matter be investigated. Now the last time I signed one of these [unreadable] because I was given a DO I was assaulted." (ECF No. 52-2) (PageID.383).

8

transferred from OCF. Defendants have explained that known gang members are not housed at OCF, which is a level I facility. According to Policy Directive 04.04.113, security threat group I members must be housed at a level II or higher facility.

Defendant Loop placed Plaintiff in temporary protective segregation during her investigation of Plaintiff's request for protection. Plaintiff could not identify the prisoners who allegedly threatened him. Plaintiff only identified one of the prisoner's as "Mr. Slick." Plaintiff has been unable to identify the identity of "Mr. Slick" and admits that "Mr. Slick" was not the prisoner who assaulted him. Plaintiff has not identified the prisoner who allegedly assaulted him and, in fact, does not know who assaulted him. Similarly, Defendant Loop could not identify who allegedly threatened Plaintiff, because Plaintiff was unable to provide any details regarding the threat. In addition to being unable to name the prisoners who allegedly made the threat, Plaintiff was unable to remember the time of day the threat was made, or the location where the threat had been made. Plaintiff alleges that on November 2, 2015, he was approached "by a group of guys and punch[ed] in the face . . . . which had caused Plaintiff's face, around his eye to swell up." (ECF No. 1, PageID.9). Plaintiff could only identify his attacker as "crazy Black" and that "Mr. Slick" was in the group.[3] *Id*.

In the opinion of the undersigned, Plaintiff has not shown that any Defendant acted with deliberate indifference to Plaintiff's request for protection. Defendant Loop investigated Plaintiff's claims by attempting to verify that a threat had been made and by attempting to identify the prisoners who were involved in the alleged threat. Plaintiff gave little help and could not

---

[3] The record does not contain a critical incident report of the November 2, 2015, assault or any other record verifying that this assault took place. Plaintiff has alleged that he was assaulted on November 2, 2015, and the court must accept that allegation as true.

9

identify names, the time of the day that the alleged threat was made, or the location where the threat was made. Plaintiff's failure to provide information regarding the threat of assault limited the investigation that could be undertaken and lead to the conclusion that Plaintiff's claims could not be verified. In addition, Plaintiff signed a waiver form indicating that he was no longer seeking protective custody. Plaintiff alleges that he was ordered to sign the form, but the form indicates that Plaintiff voluntarily signed the form. Plaintiff subsequently signed a form after he was assaulted in February 2016, where he indicated that he was signing the form based on the promise that his claims would be further investigated. Plaintiff unconditionally signed the waiver form on September 11, 2015. Plaintiff's current attempt to characterize his waiver as involuntary is not supported by the record. Defendants have shown that they investigated and considered the alleged threat to Plaintiff, and that the investigation could not identify a threat that required Plaintiff to enter protective custody. In addition, before Plaintiff was released from temporary protective custody, he signed a waiver of his request for protective custody, agreeing to reenter the general population. Plaintiff has not come forth with any evidence to establish that any Defendant acted with deliberate indifference to his safety in considering his requests for protection. At best, based upon hindsight, Plaintiff can show that Defendants may have been negligent. In the opinion of the undersigned, Plaintiff has failed to support his claim that each Defendant was deliberately indifferent to a substantial risk of harm to Plaintiff that could support an Eighth Amendment failure to protect claim.

For the same reasons, Plaintiff's retaliation claim lacks merit. Plaintiff attempts to support his retaliation claim based upon the statements he alleges each Defendant made to him. However, Plaintiff fails to take into account the action that was actually taken, including the

10

investigation into his request for protection and the signed waiver of his request for protection. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). In the opinion of the undersigned, Plaintiff has failed to show that Defendants took retaliatory action against him. Defendant Loop undertook an investigation of Plaintiff's claim that he needed protection and placed Plaintiff in temporary segregation during the investigation. The Security Classification Committee made up of Defendants Olsen and Perttu determined:

> Protection request denied. Investigation could not substantiate prisoner's claim. During SCC prisoner stated he no longer wanted protective custody and requested to go to G.P. Prisoner had changed his mind when there was a possibility to get into VPP at OCF before his ERD.

(ECF No. 44-6) (PageID.325). As a result of the lack of verification of his claimed need for protection and his voluntary waiver of protective custody, Plaintiff was released into general population on September 11, 2015. The record does not support Plaintiff's claims that his constitutional rights were violated by Defendants' conduct.

11

Plaintiff has also asserted negligence and staff corruption claims that may be characterized as state law claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966); *Moon v. Harrison Piping Supply, et al.*, 465 F.3d 719 (6th Cir. Sep. 28, 2006); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S.Ct. 1954 (1992).

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966). For, these reasons, Plaintiff's state law claims may be dismissed.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment. Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 43) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   July 11, 2017                              */s/ Timothy P. Greeley*
                                                                                  TIMOTHY P. GREELEY
                                                                                  UNITED STATES MAGISTRATE JUDGE